*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

HEATHER LYNN ATHERTON,

Plaintiff-Appellee,

v

STEVEN LAWRENCE ATHERTON,

Defendant-Appellant.

FOR PUBLICATION
August 12, 2025
3:15 PM

No. 372458
Wayne Circuit Court
LC No. 21-106839-DM

Before: YOUNG, P.J., and LETICA and KOROBKIN, JJ.

KOROBKIN, J.

Defendant appeals by leave granted[1] an August 23, 2024 interim order suspending defendant's parenting time. We vacate the order and remand.

## I. BACKGROUND AND FACTS

On March 17, 2022, the trial court entered a judgment of divorce, dissolving the parties' marriage. The judgment of divorce awarded the parties joint physical and legal custody of their minor children. The judgment provided the parties with equal parenting time, using a week on/week off schedule.

On February 6, 2023, plaintiff moved for sole physical and legal custody of the minor children. On October 19, 2023, the trial court held an evidentiary hearing on the threshold question of whether there was proper cause or change of circumstances to review custody and parenting time, and concluded that there was. The matter was referred to mediation, but mediation was unsuccessful, and on June 6, 2024, the trial court entered an interim order modifying parenting time. The June 6, 2024 interim order provided for defendant to have parenting time with the minor children on alternating weekends, and every other week during the summer. The trial court also scheduled a final evidentiary hearing for June 25, 2024. At the hearing on June 25, the parties

---

[1] *Atherton v Atherton*, unpublished order of the Court of Appeals, entered October 18, 2024 (Docket No. 372458).

-1-

were not prepared for trial, but plaintiff's counsel stated that "[a]t this point . . . we're solely looking at modifying the parenting time." The matter was reset for July 9, 2024, and reset again for July 18, 2024. Meanwhile, defendant moved for reconsideration of the June 6, 2024 order.

At the July 18, 2024 hearing, a visiting trial court judge conferred with the parties off the record in chambers and conducted an *in camera* interview with the minor children. The judge then took the bench and the following exchange took place:

> *The Court*: . . . I've heard in chambers, it's hearsay, that dad threatened to kill [mom] if I changed the parenting time in the manner requested. Is that right?

> *Ms. Atherton*: That's what I heard.

> *The Court*: That's what you heard? Okay. You heard that from the young man, from the son? Okay. I've had the chance to talk to both children. And I'm not supposed to—generally speaking, we don't reveal what children tell us in private. And the object is so that somebody doesn't get angry at them for what they told me. But this is a serious matter. And I will tell you that this representation was not contradicted by the discussion I had with the children. Did you threaten to kill this lady?

> *Mr. Atherton*: No, sir.

> *The Court*: Well, I think you probably did, from the best evidence I have. . . .

> My conclusion, . . . from what I heard, it's hearsay that this man said that if I change the arrangements, he's gonna kill this lady. Now, I accept . . . that this has not been proven beyond a reasonable doubt. But the likelihood, from my judgment, is that it's more likely than not that that happened. That means that it did happen. More likely than not means that it did happen, whether or not it's proven beyond a reasonable doubt in a courtroom.

The trial court later remarked that "the allegations are extremely credible." The court then went off the record to notify the prosecutor's office of what had transpired while ordering defendant not to leave the courtroom. When the hearing resumed, the trial court said: "I'm going to order that there will be no parenting time with the defendant until the further order of the court. Let me add that this is based, not only on what's happened here, but on the reasonable preference of the children." An interim order to that effect was entered over a month later on August 23, 2024, and states as follows:

> This matter came on before the Court this 18th of July, 2024 for the purpose of the Court conducting an in camera interview with the minor children. Based upon the information gathered during said in camera interview the Court finds it necessary and in the best interest of the minor children to issue an interim order suspending the Defendant's parenting time with the minor children. WHEREFORE, IT IS HEREBY ORDERED that the Defendant's parenting time is suspended until further order of the Court. This matter is scheduled for full

evidentiary hearing upon all pending motions on August 27, 2024 commencing at 9:00 a.m.

On August 27, 2024, an evidentiary hearing began in the trial court (before a different judge) but was not concluded. Defendant applied for leave to appeal the August 23, 2024 interim order, which this Court granted. *Atherton v Atherton*, unpublished order of the Court of Appeals, entered October 18, 2024 (Docket No. 372458). The evidentiary hearing, following a number of adjournments, continued in the trial court on March 14, 2025. From what we can tell, the August 23, 2024 interim order has not been superseded by any other order.

## II. STANDARDS OF REVIEW

"In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Barretta v Zhitkov*, 348 Mich App 539, 549; 19 NW3d 420 (2023) (quotation marks and citation omitted). The same standard applies to orders concerning parenting time. *Id*.

Under the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction. In child custody cases, [a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Clear legal error occurs when the trial court errs in its choice, interpretation, or application of the existing law. [*Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010) (quotation marks and citations omitted).]

"[W]hether constitutional due process applies and, if so, has been satisfied are legal questions reviewed de novo." *Reed v Reed*, 265 Mich App 131, 157; 693 NW2 825 (2005).

## III. ANALYSIS

Defendant argues the trial court erred by suspending his parenting time, based solely on information gathered during an *in camera* interview. We agree.[2]

---

[2] We decline to consider defendant's challenge to the June 6, 2024 order modifying parenting time. Defendant's brief on appeal asserts that we should vacate the June 6, 2024 order, but this issue was not raised in defendant's application for leave to appeal. We granted leave to appeal, "limited to the issues raised in the application and supporting brief." *Atherton v Atherton*, unpublished order of the Court of Appeals, entered October 18, 2024 (Docket No. 372458); see also MCR 7.205(E)(4) ("Unless otherwise ordered, the appeal is limited to the issues raised in the application and supporting brief").

## A. CHILD CUSTODY ACT

We begin our analysis with the Child Custody Act (CCA), MCL 722.21 *et seq*., which "authorizes a trial court to award custody and parenting time arising out of a child custody dispute and imposes a gatekeeping function on the trial court to ensure the child's stability . . . [.]" *Lieberman v Orr*, 319 Mich App 68, 78; 900 NW2d 130 (2017). "The purposes of the act are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Pierron v Pierron*, 282 Mich App 222, 243; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010). "The CCA is equitable in nature and must be liberally construed and applied to establish promptly the rights of the child and the rights and duties of the parties involved." *Barretta*, 348 Mich App at 550 (quotation marks and citation omitted).

"[T]he CCA limits a court's power to modify previous judgments or orders regarding custody and parenting time." *Id*. at 551. "As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman*, 319 Mich App at 81. "If that [initial] threshold is satisfied, the trial court must [next] determine whether the child has an established custodial environment." *Griffin v Griffin (Amended Opinion)*, 323 Mich App 110, 119; 916 NW2d 292 (2018) (footnote omitted). "[W]hether a custodial environment has been established is an intense factual inquiry." *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001). "Whether an established custodial environment exists is [also] a pivotal question, because it determines the applicable standard of proof." *Barretta*, 348 Mich App at 552.

> Where no established custodial environment exists, the trial court may change custody if it finds, by a preponderance of the evidence, that the change would be in the child's best interests. However, where an established custodial environment does exist, a court is not to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. [*LaFleche v Ybarra*, 242 Mich App 692, 696; 619 NW2d 738 (2000) (citation omitted).]

Along the same lines,

> [a] mere adjustment in parenting time requires the movant to prove by a preponderance of the evidence that the change is in the best interests of the child. However, if a purported adjustment in parenting time would alter the child's established custodial environment, that adjustment is effectively a change in custody, mandating application of the higher clear-and-convincing-evidence standard . . . . [*Stoudemire v Thomas*, 344 Mich App 34, 44; 999 NW2d 43 (2022) (quotation marks and citations omitted).]

"When determining whether a proposed change to parenting time would alter an established custodial environment, an important consideration is to what extent the proposed change will decrease a parent's time with the child." *Barretta*, 348 Mich App at 553. "[A] substantial modification of parenting time . . . alter[s] the established custodial environment that the children have with [a parent]. Whereas minor modifications that leave a party's parenting time

essentially intact do not change a child's established custodial environment." *Lieberman*, 319 Mich App at 89-90.

"Once the trial court finds proper cause or a change of circumstances and assigns the moving party the proper burden of proof, the court must consider the best interests of the child[.]" *Barretta*, 348 Mich App at 553. "The child's best interests govern a court's decision regarding parenting time. Both the statutory best-interest factors in the [CCA], MCL 722.23, and the factors listed in the parenting time statute, MCL 722.27a(6),[3] are relevant to parenting time decisions." *Shade*, 291 Mich App at 31. There are 12 best-interest factors under MCL 722.23. "Custody decisions require findings under all of [them]." *Id.*

"When the court makes its best interests determination, it is well settled that it may interview the children in camera limited to determining" one best-interest factor, "their parental preferences." *In re HRC*, 286 Mich App 444, 451; 781 NW2d 105 (2009). MCR 3.210(C)(5) provides:

> The court may interview the child privately to determine if the child is of sufficient age to express a preference regarding custody, and, if so, the reasonable preference of the child. The court shall focus the interview on these determinations, and the information received shall be applied only to the reasonable preference factor.

"The purpose behind this practice is to reduce the emotional trauma felt by a child required to testify in open court or in front of his or her parents, and to relieve the child of having to openly choose sides." *In re HRC*, 286 Mich App at 451 (quotation marks and citations omitted). "[A]lthough the judge is limited in his or her line of questioning, the rules of evidence do not apply." *Id.*; see also MRE 1101(b)(6). "A court's concern for a child's well-being in a custody proceeding, however, must not outweigh considerations of fundamental fairness in proceedings that affect parental rights." *In re HRC*, 286 Mich App at 452. "[R]egarding issues other than the child's preference[,] . . . a trial court must take testimony in open court . . . because to allow courts to discuss such matters during the in camera interview would constitute a due process violation." *Surman v Surman*, 277 Mich App 287, 302; 745 NW2d 802 (2007).

In resolving this appeal, we are guided in part by this Court's decision in *Barretta*. In that case, the defendant moved for an immediate suspension of the plaintiff's parenting time. *Barretta*, 348 Mich App at 544. After the defendant's motion was filed, "the trial court did not take evidence at hearings. Rather, the trial court simply heard counsel's oral arguments and listened to the [guardian ad litem's] recommendations." *Id.* at 558. The trial court entered multiple orders suspending the plaintiff's parenting time. *Id.* at 542-543. We held:

> [A]t no point did the trial court determine whether (1) proper cause or a change of circumstances had arisen to warrant revisiting the issues of parenting time and physical custody as established in the judgment of divorce, (2) an established custodial environment existed and whether any potential modifications to parenting time or physical custody would disrupt that established custodial environment, or

---

[3] Now MCL 722.27a(7).

(3) the evidence supported a finding that any proposed modification was in [the child]'s best interests. The trial court was required to consider these issues and make factual findings before modifying parenting time and effectively changing physical custody. The trial court committed clear legal error by failing to do so. [*Id.* at 554 (citations omitted).]

In this case, we likewise conclude that the trial court committed clear legal error by suspending defendant's parenting time, based solely on information gathered at an *in camera* interview, without conducting an evidentiary hearing. The trial court's August 23, 2024 order was, in effect, an order modifying defendant's physical custody of the minor children; the trial court granted plaintiff sole physical custody of the minor children by completely suspending defendant's parenting time. See *Barretta*, 348 Mich App at 553-554. The trial court effectively changed physical custody without making findings regarding: (1) whether the change would alter an established custodial environment, which was necessary to establish the burden of proof; and (2) applying the appropriate burden of proof, whether modification was in the children's best interests. See *id*. at 554.[4]

The trial court's August 23, 2024 order stated that suspension of defendant's parenting time was in the minor children's best interests, but this finding was based only on information gathered during the *in camera* interview, where "the information received shall be applied only to the reasonable preference factor." MCR 3.210(C)(5). "The trial court must determine the best interests of the child as defined in [MCL 722.23], and must make findings on each factor. A hearing is required before custody can be changed even on a temporary basis." *Schlender v Schlender*, 235 Mich App 230, 233; 596 NW2d 643 (1999); see also *Foskett*, 247 Mich App at 9 ("A trial court must consider and explicitly state its findings and conclusions with respect to each of these factors."). The trial court also stated at the July 18, 2024 hearing that "it's more likely than not" that defendant threatened plaintiff, but it is unclear whether preponderance of the evidence was the appropriate standard of proof, because the court did not make a finding as to whether there was an established custodial environment. See *LaFleche*, 242 Mich App at 695-696, citing MCL 722.27(1)(c). The trial court's failure to comply with these requirements of the CCA was clear legal error.

### B. DUE PROCESS

We also agree with defendant that he was denied due process because the trial court based its order on information it gathered during the *in camera* interview that went beyond parental preference. "Parents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). "At its core, due process requires the

---

[4] At an October 19, 2023 "threshold" hearing, the trial court had found that proper cause or change of circumstances justified revisiting the issues of parenting time and physical custody. Therefore, unlike in *Barretta*, the trial court did reach the threshold issues, albeit before defendant's alleged threat against plaintiff came to light.

opportunity to be heard at a meaningful time and in a meaningful manner." *In re BGP*, 320 Mich App 338, 343; 906 NW2d 228 (2017) (quotation marks, citation, and alteration omitted).

"[Q]uestioning in an in camera interview does not constitute a due process violation as long as the interview is limited to the child's parental preferences . . . [.]" *In re HRC*, 286 Mich App at 452. Merely determining a child's reasonable preference—one of the 12 best-interest factors under MCL 722.23—is not the kind of fact-finding inquiry that requires credibility assessments, weighing evidence, resolving factual conflicts, or robust appellate review. See *Surman*, 277 Mich App at 303. By contrast, other factors bearing on a child's best interests often involve deeply contested factual disputes that cannot be fairly and reliably resolved behind closed doors, outside the crucible of cross-examination, and with no opportunity to present evidence or create a record for appeal. See *id.* at 302 ("[A] trial court must take testimony in open court on issues of abuse or mistreatment because to allow courts to discuss such matters during the in camera interview would constitute a due process violation."); *In re HRC*, 286 Mich App at 452 (observing that "use of an in camera interview for fact-finding presents multiple due process problems . . . [s]hould questions or answers arise concerning disputed facts unrelated to the child's preference").

In this case, the primary basis for the trial court's decision to suspend parenting time was not the children's reasonable parental preferences but rather the trial court's independent determination that defendant had made a statement threatening plaintiff's life. The children's reasonable preferences may well have been shaped by hearing such a statement, and understandably so, but here the trial court stated that "it's more likely than not that that happened," and "the allegations are extremely credible." These statements reflect fact-finding by the trial court regarding a critically important factual dispute, not merely the children's preferences. Although the *in camera* interview permitted under MCR 3.210(C)(5) provides a useful opportunity for the trial court to consider a child's reasonable preference when determining their best interests, it is not a substitute for an evidentiary hearing on disputed and potentially outcome-determinative questions of fact about who said what to whom. That was not provided here.

## C. EX PARTE RELIEF

We readily acknowledge that in this case the trial court felt compelled to act swiftly because the information gathered during the *in camera* interview involved an alarming allegation that defendant had threatened plaintiff's life. In appropriate circumstances, "[t]he court may issue ex parte . . . orders with regard to any matter within its jurisdiction . . . ." MCR 3.207(A).

> Pending the entry of a temporary order, the court may enter an ex parte order if the court is satisfied by specific facts set forth in an affidavit or verified pleading that irreparable injury, loss, or damage will result from the delay required to effect notice, or that notice itself will precipitate adverse action before an order can be issued. [MCR 3.207(B)(1).]

MCR 3.207 "applies to child custody proceedings," and "essentially permits a trial court in a domestic-relations matter to issue an ex parte order regarding child custody if the court is satisfied that there is a threat of imminent harm." *Barretta*, 348 Mich App at 557-558; see also *Mann v Mann*, 190 Mich App 526, 533; 476 NW2d 439 (1991). "Before making an ex parte decision on

child custody," however, "the trial court must consider 'facts established by admissible evidence— whether by affidavits, live testimony, documents, or otherwise.' " *Johnson v Johnson*, 329 Mich App 110, 129; 940 NW2d 807 (2019), quoting *Mann*, 190 Mich App at 533.

In this case, as stated, the trial court's order effectively modified defendant's physical custody of the minor children because by suspending defendant's parenting time, the trial court granted sole physical custody to plaintiff. See *Barretta*, 348 Mich App at 553-554. But no admissible evidence supported the trial court's order. No affidavit was presented stating that defendant had threatened plaintiff. See MCR 3.207(B)(1). Although the trial court elicited from plaintiff at the July 18, 2024 hearing that she "heard . . . from the young man, from the son" that defendant had made such a threat, plaintiff was not testifying under oath and such testimony would have been hearsay. Any such statement by the children during the *in camera* interview was also hearsay, as the trial court recognized.[5] And defendant denied the allegation. Accordingly, the trial court did not meet the minimum evidentiary requirements for entry of an ex parte order on the basis of a threat of imminent harm.

Additionally, "ex parte orders issued under MCR 3.207 that affect child custody must comply with specific notice requirements," *Barretta*, 348 Mich App at 558 (quotation marks and citation omitted) and the objecting party must have an opportunity for a prompt hearing, see MCR 3.207(B)(6)(a).

An ex parte order providing for child support, custody, or visitation pursuant to MCL 722.27a, must include the following notice:

"NOTICE:

"1. You may file a written objection to this order or a motion to modify or rescind this order. You must file the written objection or motion with the clerk of the court within 14 days after you were served with this order. You must serve a true copy of the objection or motion on the friend of the court and the party who obtained the order.

"2. If you file a written objection, the friend of the court must try to resolve the dispute. If the friend of the court cannot resolve the dispute and if you wish to bring

---

[5] To be clear, defendant's alleged threatening statement was not hearsay. See *People v Kowalak*, 215 Mich App 554, 557; 546 NW2d 681 (1996). Rather, any out-of-court statement by his children that he had made such a statement was hearsay, and as such inadmissible absent a hearsay exception. See *id.* at 557-558. And although the rules of evidence do not apply to *in camera* proceedings to determine a child's custodial preference, MRE 1101(b)(6), use of a statement from an *in camera* interview for another purpose—here, factfinding to support suspension of parenting time—does not comply with the requirement that an ex parte order be supported by "specific facts set forth in an affidavit or verified pleading," MCR 3.207(B)(1). If a child had personal knowledge that defendant made a threatening statement, the child's affidavit or live testimony could have formed the basis for an ex parte order.

the matter before the court without the assistance of counsel, the friend of the court must provide you with form pleadings and written instructions and must schedule a hearing with the court.

"3. The ex parte order will automatically become a temporary order if you do not file a written objection or motion to modify or rescind the ex parte order and a request for a hearing. Even if an objection is filed, the ex parte order will remain in effect and must be obeyed unless changed by a later court order." [MCR 3.207(B)(5).[6]]

If the party opposing ex parte relief requests a hearing, "the hearing must be held within 21 days," MCR 3.207(B)(6)(a), and the court is required to "resolve the dispute within 28 days after the hearing is requested," MCL 722.27a(14).[7] But here, the trial court did not comply with the notice requirements of MCR 3.207, did not hold a hearing within 21 days, and did not resolve the dispute within 28 days. See *Sanchez v Healey*, 513 Mich 1084, 1088 (WELCH, J., concurring) (expressing "concern," in a similar case, "that everything after entry of the ex parte order has moved painfully slowly. Eight months have passed and there is still not a final resolution."). "Therefore, even if the [trial court's] order[] had been supported by admissible evidence, [it] nonetheless failed to comply with the notice requirements under MCR 3.207(B)(5) and (6)." *Barretta*, 348 Mich App at 558.

When a trial court believes that there is a threat of imminent harm, including when information is initially learned in an *in camera* interview, MCR 3.207 provides a legal framework for immediate suspension of custody. But where, as here, the trial court has not complied with the evidentiary and procedural requirements of MCR 3.207, we cannot countenance its decision to suspend parenting time in such a way as to effect a change in custody without an evidentiary hearing. See *Barretta*, 348 Mich App at 558.

## IV. CONCLUSION

The trial court committed clear legal error by suspending defendant's parenting time, effectively modifying physical custody, based solely on information gathered during an *in camera* interview, without holding an evidentiary hearing, making required findings, or complying with the requirements of MCR 3.207. The August 23, 2024 interim order must therefore be vacated.

We recognize that defendant applied for and was granted leave to appeal when an evidentiary hearing was ongoing in the trial court. If further proceedings are required, in light of this opinion or for any other reason, we direct the trial court to undertake and complete them

---

[6] We note that MCR 3.207 was recently amended, effective September 1, 2025, making changes to the contents of the notice. MCR 3.207, as amended June 18, 2025, ___ Mich ___ (2025).

[7] The right to a prompt and fair postdeprivation hearing is a familiar due process requirement for situations in which swift action must be taken or it is not practical to hold a hearing in advance. See, e.g., *BS v Somerset Co*, 704 F3d 250, 271-272 (CA 3, 2013); *Campbell v Burt*, 141 F3d 927, 929 (CA 9, 1998).

immediately.  In any event an appropriate order should be entered resolving the matter within 28 days.  See MCL 722.27a(14); see also *Sanchez*, 513 Mich at 1087-1089 (WELCH, J., concurring).

Vacated and remanded.  We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Anica Letica